

**T**HE **C**ITY OF **N**EW **Y**ORK
**LAW DEPARTMENT**

ZACHARY W. CARTER
*Corporation Counsel*

SPECIAL FEDERAL LITIGATION
DIVISION
100 Church Street, 3rd Floor
New York, NY 10007

Wilda J. Rodriguez
phone: (212) 356-4361
fax: (212) 356-3508
email: wrodrigu@law.nyc.gov

July 29, 2016

**VIA ECF**
Honorable Vera M. Scanlon
United States Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:   Kashif Alleyne, et al. v. City of New York, et al., 15-CV-01860 (WFK)(VMS)

Your Honor:

I am an attorney in the Office of Zachary W. Carter, Corporation Counsel of the City of New York, representing the defendants, Detectives Ylka Morales *s/h/a* "Yika Morales," Natia Kalandadz, James McCullough, Lorne Kanover and William Rahman, in the above-referenced matter. Defendants write in opposition to Plaintiffs' July 22, 2016 letter motion (Docket No. 42) renewing its application to compel the production of the New York City Police Department file for the confidential informant ("C.I.") in this case.[1]

Confidential informant files are among the most sensitive documents maintained by the NYPD. The risks of disclosure are significant, particularly where the "C.I." is not a governmental informant, but an average citizen living amongst the very individuals they provide intelligence on. Disclosure of even part of a file, such as the informant's criminal history or "RAP" sheet, could enable Plaintiffs (or any interested or adverse party to the investigation) to ascertain the identity of the "C.I.", since the universe of persons who could have given the police information about Plaintiffs' activities is limited. Also significant, are the many assurances given to potential informants regarding confidentiality by law enforcement. If the NYPD is unable to uphold these guarantees, it would without a doubt not only compromise the integrity of the process, but also jeopardize the NYPD's ability to recruit informants without reprisal of cooperation, especially where a non-governmental informant is concerned.

---

[1] On June 28, 2016, Defendants provided a response in opposition to plaintiffs' June 27, 2016 motion to compel general "C.I." discovery two days before the end of discovery. (See Docket No. 40). Plaintiffs raise some of the same arguments for general "C.I." discovery in this current application. To the extent those arguments are already addressed in Defendants June 28 opposition, they are not re-argued here. Instead, Defendants only address those categories of records which relate to Plaintiffs' renewed motion in this application for specific types of "C.I." discovery.

### I. The <u>Additional</u> "C.I." Discovery Sought is Irrelevant

Most important and decisive here, Defendants direct your Honor to the vast amount of discovery regarding the "C.I." provided to Plaintiffs at Detective Rahman's June 16, 2016 examination before trial.[2] This discovery regarding the "C.I.", includes but is not limited to, (i) the C.I.'s gender (285:5,13,22; 286); (ii) the C.I.'s arrest history as it is known to Det. Rahman, including arrest charge(s) (285:5-25); (iii) whether Det. Rahman ever spoke with the District Attorney regarding any criminal or legal problems involving the C.I. (282:6-17); (iv) the professional history and relationship between Det. Rahman and the C.I. (278:23-25; 279: 1-7); (v) the number of times the C.I. has been used for intelligence and controlled buys (278:14-25; 279:1-3); (vi) the number of times the C.I.'s intelligence was used to obtain search warrants *unrelated* to the search warrants at issue (279:8-25; 280:1-3); (vii) whether Det. Rahman was the first law enforcement officer the C.I. had ever worked with (284:25-285:285:1-4); (viii) testimony regarding the C.I. program and how Det. Rahman enrolled the C.I. into the NYPD program (289:22-25; 290:1-20); (ix) the number of buys made by the C.I. at the subject location at issue, "1346 Prospect Place" (247:17-23); (x) information concerning the C.I. payment sheet for unrelated location "1333" and the subject location "1346" (252: 3-25; 259:19-21); (xi) the amount of monetary compensation the C.I. received for a positive controlled buy or intelligence information (259:9-15), so on and so forth.[3]

Plaintiffs' attempt to compel *further* C.I. discovery is a clear example of a fishing expedition and delay tactic to further extend discovery and harass Defendants. Compulsion of (1) "the C.I.'s information from the NYPD confidential informant database" including "quarterly reviews, evaluations ratings by the C.I.'s designated contact and supervisor on a quarterly basis ("CI profile records"); (2) "the "Rap" sheet of the CI ("CI RAP Sheet Records")"; (3) "*any* documentation reflecting *any* contact between the CI and Rahman, or *any* other member of the NYPD regarding this incident ("CI/Rahman records")"; (4) "CI/Supervisor records"; and (5) "documentation concerning payments to the CI for his/her services" are not only wholly and utterly irrelevant to Plaintiffs' claim for a warrantless, unlawful entry and search into the premises of "1346", but also cumulative of all of the paper discovery (i.e. search warrant affidavit) and deposition discovery exchanged thus far. These demands are wildly disproportional to the needs of Plaintiffs' case, burdensome, and unjustifiable. Moreover, these demands come at the eve of the close of discovery and are unmerited.[4] Defendants remind this Court that on May 6, 2016, Plaintiffs informed the Court that "Plaintiffs are satisfied with the Confidential Information they have received *and seek no further relief on this issue*." (Docket No. 26).

---

[2] Per your Honor's ruling that the testimony and discovery be marked for *"Attorneys' Eyes Only"* (Docket No. 37), Defendants make only general references to the record and the information obtained by Plaintiffs.

[3] By virtue of the already obtained discovery, the C.I.'s identity could be compromised should the information inadvertently go beyond "attorneys' eyes" or be disclosed. The injury is one of safety and far more difficult to remedy than any other kind.

[4] The only claims remaining in Plaintiffs' Complaint are Unlawful Entry and Search, False Arrest, and Failure to Intervene.

While Plaintiffs would like to concede that their sudden change in position is due to "significant new information" of a simultaneous *albeit* unrelated search warrant execution, it is of no consequence. Plaintiffs clearly possessed this information regarding "1333" before any testimony was given by Det. Rahman (246:15-25; 247:1-16; 260:10-25; 275:19-25; 276). The fact that two search warrants in the same neighborhood were being executed simultaneously has no bearing on Plaintiffs' case. Rather, the only connection between "1333" and "1346" is that the lead detective for both locations was Det. Rahman, and that Det. Rahman may have possibly used the same "C.I." to conduct controlled buys at each location because the "C.I." fit into the neighborhood. This, however, does not follow the far-reaching contention that therefore, the "C.I." and Det. Rahman were engaged in a "quid pro quo" arrangement, or that Det. Rahman "covered his tracks to prevent Plaintiffs' from learning that something truly untoward *might have happened*." (Docket No. 42 at 4).[5] Speculation does not warrant "C.I." disclosure.

> II. The Additional "C.I." Discovery is Protected by the Informer's Privilege & Plaintiffs Fail to Demonstrate a "Compelling Need" Outweighing the Public Interest in Nondisclosure

Disclosure of such "C.I." categories of discovery is protected by the law enforcement privilege since disclosing such information would reveal the C.I.'s identity and activities, and endanger the C.I. Plaintiffs' argument that this discovery will not expose the C.I. to danger because it would be produced almost three years after the incident is misplaced. The law enforcement privilege is designed to "preserve the confidentiality of sources" and "safeguard the privacy of individuals involved in an investigation." In re City of New York, 607 F.3d 923 (2d Cir. 2010) (citations omitted). This privilege allows the government to "withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." Roviaro v. United States, 353 U.S. 53, 59, 77 S. Ct 623, 627 (1957). "The government has a legitimate public policy interest in preventing the disclosure of the name of confidential informants." Ayala v. City of New York, 2004 U.S. Dist. LEXIS 25330, *2 (S.D.N.Y. Dec. 16, 2004) (citing Roviaro, 353 U.S. at 64). *This privilege covers not just the informant's identity, but also "information that would undermine the confidentiality of sources, information that would endanger witness and law enforcement personnel [or] the privacy of individuals involved in an investigation..."* In re City of New York, 607 F.3d at 944.

There is a "strong presumption against lifting the privilege." In re City of New York, 607 F.3d at 945. "The burden of establishing the need for disclosure is upon the person who seeks it." Ayala, 2004 U.S. Dist. LEXIS 25330, at *3 (citation omitted). To rebut the strong presumption against disclosure, plaintiff "must show (1) that [his] suit is non-frivolous and brought in good faith, (2) that the information sought is [not] available through other discovery or from other sources, and (3) there is a compelling need for the information [he] seek[s]." In re City of New York, 607 F.3d at 945 (citations omitted). "It is not enough that identification might be of some assistance, and disclosure should not be allowed simply to permit a fishing expedition

---

[5] Q. If the buy is not successful, then the CI doesn't get paid?
  A. Not in all case scenarios. A CI can get paid for providing good Intel, positive intelligence in regards to other areas, other things, on and on. 255:24-24; 256:1-5.

or to gratify the moving party's curiosity or vengeance…." White v. City of New York, 09 Civ. 9901 (BSJ) (THK), 2010 U.S. Dist. LEXIS 74270, *3-4 (S.D.N.Y. July 23, 2010) (Report and Recommendation) (internal quotations and citation omitted), adopted by Order dated Sept. 1, 2011, Civil Docket Report, at Doc. No. 26.  Here, assuming *arguendo* that prong one is met and that the case is not frivolous or brought in bad faith, Plaintiffs fail to establish the second and third prongs.  Regarding the second prong, availability from other sources, Det. Rahman has already testified as to how he met the "C.I." (narcotics related arrest), and about the facts he learned from the "C.I." regarding his investigation of "1346".  Finally, the search warrant affidavit has been unsealed and produced, and discusses the information the "C.I." provided in the past that proved to be reliable.

Regarding the third element, Plaintiffs cannot establish a compelling need for the information they seek.  Notably, the "C.I." was not present in Plaintiffs' apartment on the date Plaintiffs were arrested.  It is of no consequence that Plaintiffs were not the targets of the search warrants because Plaintiffs were found in possession of marijuana on their person and in their living quarters.  By Plaintiffs' logic, law enforcement would not be authorized to validly arrest an individual committing a crime merely because the target of the operation concerned a different individual. Here, the probable cause supporting Plaintiffs' arrests is the fact that they were found in possession of marijuana.  Since the "C.I." was not present for the acts that precipitated Plaintiffs' arrests and prosecution, Plaintiffs cannot show how the "C.I.'s" profile records, rapsheet, communications, supervisor records, and payment history might be used to test probable cause.  See Kirkland v. City of New York, 06 CV 0331 (NG) (CLP), 2007 U.S. Dist. LEXIS 102427 (E.D.N.Y. Feb. 21, 2007) (denying plaintiff's application for leave to amend complaint to add CI as defendant where CI's information led to issuance of search warrant and holding that the CI's identity is protected by the informer's privilege) (Report and Recommendation), adopted by Kirkland v. City of New York, 06 CV 0331 (NG) (CLP), 2007 U.S. Dist. LEXIS 34109 (E.D.N.Y. May 9, 2007).  Lastly, Defendants note that impugning the credibility of the "C.I." is **not** part of the standard for disclosure. In nearly every case involving a "C.I.", either court consideration or money is offered in exchange for the "C.I.'s" cooperation. If that were sufficient to justify identifying a "C.I." or the "C.I." records, this privilege would cease to exist.

Defendants' position is that no "C.I." information beyond that which has already been disclosed should be provided in this case since there is no compelling need that outweighs the public interest in nondisclosure. Defendants respectfully submit that Plaintiffs have failed to meet their burden of establishing the need for disclosure, and therefore, their application should be denied. However, should the Court be inclined to entertain Plaintiffs' motion, Defendants respectfully request leave to fully brief this motion.  Thank you for your time and consideration.

                                      Respectfully submitted,

                                      /s/

                                      Wilda J. Rodriguez
                                      *Assistant Corporation Counsel*

cc:     Robert Marinelli, Esq. (By ECF)